FILED

2021 Dec-21  AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER REILLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:21-cv-00857-CLM** |
| | ) | |
| **AVERY AUTO SALES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Jennifer Reilly signed a contract with Avery Auto Sales, Inc. to buy a Jeep. Reilly financed her Jeep purchase through Credit Acceptance Corporation and entered a Vehicle Service Contract ("VSC") with First Automotive Service Corporation. Reilly now sues Avery Auto, First Automotive, and Credit Acceptance, claiming (a) breach of warranty against all defendants and (b) violations of the Fair Credit Reporting Act ("FCRA") against Credit Acceptance.

Defendant Credit Acceptance seeks to compel arbitration and asks the court to dismiss Reilly's claims against it with prejudice. *See* Doc. 2. Credit Acceptance says that the court must compel arbitration because the Retail Installment Contract ("the Contract") contains a broad arbitration clause and Reilly's claims fall under the arbitration clause.

1

For the reasons stated within, the court will **GRANT** Credit Acceptance's motion to compel arbitration of Reilly's claims against it but **DENY** its motion to dismiss Reilly's claims with prejudice (doc. 2). The court will instead **STAY** the claims against Credit Acceptance under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 and **REMAND** the remaining state law claims to state court.

## STATEMENT OF THE ALLEGED FACTS

Jennifer Reilly bought a 2010 Jeep Liberty from Avery Auto. (Doc. 1-1, ¶ 5.) Reilly executed the purchase of the Jeep by agreeing to and signing the Contract, without altering the provisions of the Contract. (Doc. 2-1, ¶¶ 3, 5.) The Contract contains an arbitration provision, which states that at the request of either party (before or after the start of a lawsuit), the "Dispute shall be fully resolved by binding arbitration." (Doc. 2-1 Ex. 1 at 9.) The arbitration provision defines a "Dispute" like this:

> A "Dispute" is any controversy or claim between You and Us rising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of the amounts due under this Contract, the purchase, sale, or delivery set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

*Id.*

The Contract contains a provision showing that Reilly opted to purchase an extended 12-month/12,000-mile warranty or service contract through First Automotive for $1,499.00. (*See* Doc. 2-1 Ex. 1 at 6.) In a separate document, Reilly entered a VSC with First Automotive, stating that Reilly would pay $1,499.00 and that First Automotive would cover the costs of repairing or replacing covered damaged or defective automobile parts for twelve months or 12,000 miles, whichever came first. (Doc. 1-1, ¶¶ 7–8.) The VSC itself does not have an arbitration clause.

Credit Acceptance Corporation accepted assignment of the Contract from Avery Auto (Doc 2-1, ¶ 3). Reilly made payments to Credit Acceptance in accordance with the Contract. (Doc. 1-1, ¶ 6; Doc. 2-1, ¶ 4.)

The Jeep's head gasket and engine started having issues in September 2018, so Reilly took the Jeep to get repaired under the warranty. (*Id.* ¶¶ 9–12). Avery Auto, First Automotive, and Credit Acceptance told Reilly that they would not pay for the cost of repairing the Jeep's head gasket or engine. (*Id.* ¶ 13). Reilly left the inoperable Jeep at the repair shop. (*Id.*) Representatives of Credit Acceptance repossessed the Jeep. (*Id.*) Credit Acceptance reported negative credit information to credit agencies. Reilly asserts that Credit Acceptance reported inaccurate information and that Credit Acceptance failed to remove the inaccurate information despite her requests. (*Id.* ¶¶ 23–27.)

3

Reilly sued Avery Auto, First Automotive, and Credit Acceptance. (*See* Doc. 1-1.) In Count I, Reilly alleges breach of warranty, asserting that Credit Acceptance, Avery Auto, and First Automotive failed to repair the Jeep in accordance with the express warranty she bought. (*Id.* ¶¶ 16–21.) In Count II, Reilly alleges that Credit Acceptance violated the Fair Credit Reporting Act ("FCRA") by reporting inaccurate credit information in her customer file. (*Id.* ¶¶ 22–27.)

## STANDARD OF REVIEW

In ruling on a motion to compel arbitration, this court applies a standard like the standard of review applied to rule on a motion for summary judgment. *See In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate"). A motion for summary judgment should be granted if "no genuine dispute as to any material fact" remains in the action and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018).

4

## ANALYSIS

### I.   The court will grant the motion to compel arbitration.

The Federal Arbitration Act ("FAA") provides that any arbitration provision in a written "contract evidencing a transaction involving commerce[1] . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (footnote added). This provision "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Following these policies, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Id.* When determining whether to grant a motion to compel arbitration, courts must "consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Carusone v. Nintendo of Am., Inc.*, No. 5:19-CV-01183-LCB, 2020 WL 3545468, at *3 (N.D. Ala. June 30, 2020) (quoting *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1318 (S.D. Ala. 2007)). "To resolve these questions, courts apply state-law

---

[1] The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'" which allows the enforcement of arbitration provisions within "the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). The transfer or payment of money across states affects commerce under the Commerce Clause. *See Montgomery Cty. Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1258–59 (11th Cir. 2015). Plaintiff Reilly, a citizen of Alabama, financed the purchase of her 2010 Jeep Liberty with Defendant Credit Acceptance, a Michigan Corporation. (Doc. 1 ¶¶ 1, 4, 6.) So the "involving commerce" requirement of the FAA is satisfied in this case.

principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration." *Scurtu*, 523 F. Supp. 2d at 1318; *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[When] determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state" where the dispute occurred.).

## A. Existence of a valid arbitration agreement between the parties

The threshold question of whether an arbitration agreement exists is "simply a matter of contract." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). But "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* at 1329. So without an agreement to arbitrate, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

Reilly bought the Jeep by signing a Contract with Avery Auto that contained an arbitration provision. Reilly made no alterations to the Contract. (Doc. 2-1, ¶¶ 1–5.) "[W]hen a competent adult . . . signs a contract, [they] will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Ex parte*

*Brown*, 26 So. 3d 1222, 1227 (Ala. 2009). Because Reilly signed the Contract and

made no alterations to it, she is bound to the arbitration provision in the Contract.

*See id.* Credit Acceptance accepted assignment of the Contract from Avery Auto.[2]

(Doc. 2-1 ¶ 3.) So a valid arbitration agreement exists between Reilly and Credit

Acceptance.

### B. Scope of the arbitration agreement

Reilly argues that the scope of the Contract's arbitration provision does not

cover the warranty she bought through the VSC. (*See id.* at 3–4). Under the FAA,

"any doubts concerning the scope of arbitral issues should be resolved in favor of

arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–

25 (1983). "[T]he party resisting arbitration bears the burden of proving that the

claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v.

Randolph*, 531 U.S. 79, 91 (2000). "[A]n order to arbitrate [a] particular grievance

should not be denied" if the party resisting arbitration cannot show "with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

650 (1986). In distinguishing between broad and narrow arbitration provisions,

---

[2] Reilly does not dispute the validity of the Retail Installment Contract's assignment by Avery
Auto Sales, Inc. to Credit Acceptance Corporation. The arbitration provision in the Retail
Installment Contract states that a valid assignee can include, but is not limited to, Credit
Acceptance Corporation. (*See.* Doc. 2-1 Ex. 1 at 4.)

courts have concluded that "the phrase 'any controversy or claim arising out of or relating to' . . . covers a broad range of disputes." *Harris v. Palm Harbor Homes, Inc.*, 198 F. Supp. 2d 1303, 1306 (M.D. Ala. 2002) (quoting *Ex parte Crisona*, 743 So.2d 452, 456 (Ala. 1999)); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 5. When a court finds that an arbitration provision is broad, "only the most forceful evidence" can overcome the federal presumption in favor of arbitration. *AT&T Techs., Inc.*, 475 U.S. at 650.

Here, the optional extended warranty was part of the Contract that contains the arbitration provision. (Doc. 1-1 ¶¶ 7–8.) Specifically, the Contract includes the $1,499.00 purchase price for the warranty, the 12-month/12,000-mile term, and the name of the company that would provide the extended warranty or service contract—First Automotive. (Doc. 2-1 p. 6.) The Contract then states, "Refer to the optional extended warranty or service contract for details about coverage and duration." (*Id.*) Reilly argues that because the VSC contains no arbitration provision itself, her claim for breach of warranty is not subject to an arbitration provision. (*See* Doc. 10 at 2–4.) But the language in the Contract sufficiently links the Contract and the VSC. Further, in Reilly's complaint, she acknowledges that she "entered into [the] vehicle protection warranty contract with Defendant First Automotive Service Corporation as part of the purchase of" the Jeep—a purchase governed by the Contract that contains the arbitration provision. (Doc. 1-1, ¶ 7.)

Because the Contract contains a provision showing that Reilly bought the optional extended warranty or service contract and because the Contract specifically references the VSC, the VSC and extended warranty issues are sufficiently related to the Contract. So warranty-related disputes fall within the scope of the Contract's broad arbitration provision. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 5. Reilly has failed to show with "positive assurance" or "forceful evidence" that the scope of the arbitration provision within the Contract does not cover her claims. (*See* Doc. 10.) Reilly's claims against Credit Acceptance for violating the FRCA and for breaching the warranty are thus disputes within the scope of the broad arbitration provision in the Contract and are therefore subject to arbitration.

\* \* \*

In sum, the court will compel arbitration because (a) the Contract contains a valid arbitration agreement and (b) Reilly's claims for FRCA violations and breach of warranty fall under the broad arbitration provision.

## II.   The court will stay the case, rather than dismiss it with prejudice.

The court must next decide whether to grant Credit Acceptance's motion to dismiss Reilly's claims with prejudice or stay the case until the parties begin arbitration. The FAA provides that "the court in which the suit is pending . . . shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C.

§ 3. "Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration" rather than be dismissed. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (holding that the district court erred in dismissing and remanding "with instructions that an order be issued staying [federal] and state law claims pending arbitration").

When there is no substantive claim and "the only cause of action . . . [is] for an order compelling arbitration," an order to stay the case until the conclusion of arbitration is not required. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015). But when "the plaintiff brought claims on issues referable to arbitration, and in response, the defendants sought to compel arbitration," then a stay is mandatory. *Id.*; *see also Holmes v. Credit Acceptance Corp.*, No. 5:20-CV-0613-LCB, 2021 WL 942080, at *4 (N.D. Ala. Feb. 5, 2021), *appeal dismissed,* No. 21-10765-GG, 2021 WL 2414028 (11th Cir. Apr. 5, 2021) (staying the case because '"granting a motion to stay when a party moves to compel arbitration is the proper remedy' based on the plain language of 9 U.S.C. § 3" (citation omitted)).

Reilly is suing on substantive claims referable to arbitration. In her complaint, Reilly asserted a claim for FCRA violations and a claim for breach of warranty. (Doc. 1-1 ¶¶ 16–27.) In response, Credit Acceptance argued that these claims were

subject to the Contract's Arbitration Agreement and moved to compel arbitration. (*See* Doc. 2.) Because the claims for FCRA violations and breach of warranty are substantive claims that can be arbitrated, the court must first stay the proceedings. *See United Steel*, 807 F.3d at 1268.

So this court will stay the claims against Credit Acceptance and deny Credit Acceptance's motion to dismiss the case with prejudice.

**III.    The court will remand the state law claims.**

The court has original jurisdiction over Reilly's FCRA claim against Credit Acceptance, and the court exercised supplemental jurisdiction over the related state law claims. *See* 28 U.S.C. § 1331; 18 U.S.C. § 1367. As explained in Parts I–II, the court will stay both claims against Credit Acceptance until the parties begin arbitration; then the court will dismiss those claims without prejudice.

That leaves Reilly's state-law breach of warranty claims against Avery Auto and First Automotive. The court does not have original jurisdiction over these claims, and neither Avery Auto nor First Automotive has asserted a right to arbitration. The court will not continue to exercise supplemental jurisdiction over these purely state law claims under 28 U.S.C. § 1367. So once Reilly and Credit Acceptance have entered arbitration, the court will (a) dismiss the claims against Credit Acceptance without prejudice, then (b) remand the breach of warranty claims against Avery Auto and First Automotive back to state court.

## CONCLUSION

For the reasons stated above, the court will **GRANT** Credit Acceptance's motion to compel arbitration (doc. 2), **DENY** Credit Acceptance's motion to dismiss the plaintiff's claims with prejudice (doc. 2), **STAY** the claims against Credit Acceptance under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3,[3] and **REMAND** the state law claims against the other defendants to state court.

Reilly and Credit Acceptance must inform the court when arbitration has begun. When they do, the court will dismiss the claims against Credit Acceptance without prejudice and remand the claims against the other defendants. The dismissal of the claims against Credit Acceptance will allow Reilly or Credit Acceptance to refile this case, to confirm, vacate, or modify any arbitration award.

The court will enter a separate order that carries out this ruling.

**DONE** on December 21, 2021.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[3] *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("[Section 3 of the Federal Arbitration Act] provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable.")